UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EILEEN COYLE,

                       Plaintiff,

v.                                                                  5:17-CV-0924
                                                                    (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

Olinsky Law Group                                HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.             PETER W. JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c) Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6.).

      Currently before the Court, in this Social Security action filed by Eileen C. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion seeking remand under Sentence Four of 42 U.S.C. § 405(g) is granted, and Defendant's motion is denied.

I. **RELEVANT BACKGROUND**

   A. **Factual Background**

Plaintiff was born in 1968. (T. 72.) She completed the 12th grade. (T. 269.) Generally, Plaintiff's alleged disability consists of major depressive disorder and anxiety. (T. 268.) Her alleged disability onset date is September 1, 2009. (T. 72.) Her date last insured is March 31, 2014. (*Id.*) She previously worked as a telephone clerk and claims clerk. (T. 16, 270.)

   B. **Procedural History**

On September 11, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 72.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 29, 2015, and again on October 7, 2015, Plaintiff appeared before the ALJ, Marie Greener. (T. 26-54, 55-71.) On December 8, 2015, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-23.) On June 20, 2017 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C. **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-18.) First, the ALJ found Plaintiff met the insured status requirements through March 31, 2014 and Plaintiff had not engaged in substantial gainful activity since September 1, 2009. (T. 12.) Second, the ALJ found Plaintiff had the severe impairments of asthma, chronic obstructive pulmonary disease ("COPD"), anxiety, and depression. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> Work at the light level of exertion with no concentrated exposure to respiratory irritants such as smoke, fumes, and dust. She is limited to work that consists of routine daily tasks that do not significantly change in pace or location on a daily basis. She can have no more than occasional interactions with supervisors, coworkers, or the public. Although she can work in proximity to others, she is limited to tasks that do not require working in conjunction with others and those that predominantly involve working with objects rather than people.

(T. 14.) Fifth, the ALJ determined Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 16-18.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to discuss, evaluate, or weigh treating psychiatrist, Catalin Butunoi's, medical source statement. (Dkt. No. 9 at 12-14 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ's psychiatric technique

determinations lacked the required specificity to be upheld as supported by substantial evidence. (*Id.* at 14-18.)

## B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ mentioned and weighed Dr. Butunoi's statement. (Dkt. No. 10 at 5-6 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ's step two and three findings were adequate. (*Id.* at 6-9.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920[1]. The Supreme Court has recognized the validity of this

---

[1] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Medical Source Statement Provided by Catalin Butunoi, M.D.

Plaintiff asserts the ALJ failed to "discuss, evaluate, or weigh treating psychiatrist Dr. Butunoi's medical source statement." (Dkt. No. 9 at 12-14 [Pl.'s Mem. of Law].) Plaintiff contends the ALJ "did not mention Dr. Butunoi at all in her determination . . . [and] this oversight is undoubtedly a complete aberration to well-settle precedent, as well as codified rules and regulations." (*Id.*) Plaintiff goes on to claim that the ALJ's "omission is so glaring, so uncharacteristic, one may question whether the ALJ even had access to Dr. Butunoi's opinion." (*Id.*)

For the following reasons, Plaintiff's argument fails. Under 20 C.F.R. §§ 404.1527 and 416.927, ALJs are required to weigh and evaluate "every medical opinion." Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by ... other substantial evidence ...." *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

Contrary to Plaintiff's assertion, the ALJ clearly had access to Dr. Butunoi's opinion and referenced the doctor's opinion in her written decision. Although the ALJ did not mention Dr. Butunoi by name, the ALJ's written decision refers to Exhibit 10F. (T. 16.) The only piece of evidence contained in Exhibit 10F is Dr. Butunoi's medical source statement. (T. 517-521.) The ALJ stated, "the extreme limitations opined by the claimant's counselor from the Brownell Center are not supported by her daily activities and therefore are not entitled to any weight." (*Id.*) At the hearing, the ALJ specifically questioned Plaintiff's counsel regarding the signature on Exhibit 10F and was informed the statement was signed by Dr. Butunoi. (T. 59.) Therefore, contrary to Plaintiff's assertion, the ALJ was aware of and weighed Dr. Butunoi's opinion.

**B. The Special Technique**

Plaintiff contends the ALJ's psychiatric technique determination lacked the required specificity to be upheld. (Dkt. No. 9 at 14-18 [Pl.'s Mem. of Law].) However, in support of her argument, Plaintiff essentially admonishes the ALJ's treatment of the evidence pertaining to Plaintiff's mental health at all steps of the sequential process. Plaintiff contends the ALJ failed to properly explain weight afforded to various treating mental health providers and such failure prevents the Court from considering whether the ALJ's determination was supported by substantial evidence. (*Id.* at 16-18.)

In addition to the typical five-step analysis outlined in 20 C.F.R. §§ 404.1520 and 416.920, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable

7

impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § 404.1520a(d)(3).

*Kohler,* 546 F.3d at 265-266.

Moreover, the Regulations "require the ALJ's written decision to reflect application of the technique, and explicitly provide that the decision *'must* include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'" *Kohler,* 546 F.3d at 266 (quoting 20 C.F.R. § 404.1520a(e)(2)).

"If the ALJ fails to provide specific findings regarding the degree of limitation in each of the four functional areas, then the reviewing court will be unable to determine whether 'there is substantial evidence for the ALJ's conclusion that [the Plaintiff's] impairment, while severe, was not as severe as any listed disabling condition,' and the case should be remanded." *Fait v. Astrue,* No. 10-CV-5407, 2012 WL 2449939, at *5 (E.D.N.Y. June 27, 2012) (alteration in original) (quoting *Kohler,* 546 F.3d at 267-88).

The Court in *Kohler* left open the possibility that an ALJ's failure to adhere to the Regulations' special technique might be harmless; however, the Court determined the

8

ALJ's error in *Kohler* was not harmless because they could not "identify findings regarding the degree of Plaintiff's limitations in each of the four functional areas nor discern whether the ALJ properly considered all evidence relevant to those areas." *Kohler*, 546 F.3d at 269.

In this case, at step two, the ALJ determined Plaintiff had severe mental impairments. (T. 12.) In her step three analysis, the ALJ applied the special technique and determined Plaintiff's severe mental impairments did not meet or equal Listing §§ 12.04 or 12.06. (T. 13.) In her application of the special technique the ALJ determined Plaintiff had mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence or pace; and no episodes of decompensation. (*Id.*) Therefore, the ALJ's written decision reflected application of the technique and included specific findings as to the degree of limitation in each of the four functional areas.

Although the ALJ adhered to the special technique and provided specific findings in each functional area, she provided no analysis or citation to record in support of her determinations. To be sure, the Second Circuit has held that "the absence of an express rationale does not prevent [the court] from upholding the ALJ's determination regarding [Plaintiff's] claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *see also Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-113 (2d Cir. 2010) ("Here, although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed

decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination."); *see Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"). Therefore, the ALJ's failure to provide an express rational at step three is not remandable error where other portions of the ALJ's decision provide substantial evidence to support the determination.

However, the ALJ's rationale for her step three determination cannot be gleaned from the record. The ALJ's error is twofold. First, the ALJ's rationale cannot be gleaned from the record because her determination does not align with any medical opinion in the record. Second, the ALJ's treatment of the medical evidence in the record was faulty because the ALJ failed to resolve conflicts in the record, improperly relied on Plaintiff's activities of daily living, and misstated the record.

The ALJ's determination, that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence or pace; and no episodes of decompensation does not correspond to any opinion in the record. Non-examining State agency medical examiner, E. Kamin, Ph.D., completed a psychiatric review technique form and determined Plaintiff had no restrictions in daily living, mild difficulties in maintaining social functioning, mild difficulties in maintain concentration, persistence or pace, and no episodes of decompensation. (T. 79.) Other evidence in the record, as outline further herein,

contains widely varying opinions regarding Plaintiff's functional limitations due to her mental impairments. Although the ALJ found greater restrictions in Plaintiff's daily living, ability to maintain social functioning, and ability to maintain concentration, persistence or pace than Dr. Kamin, the ALJ's error was not in her actual findings, but in her failure to provide sufficient rational and analysis for this Court to glean her rationale and perform meaningful review.

In her step four analysis, the ALJ failed to properly assess the medical opinion evidence in the record. The ALJ discussed and weighed some of the medical opinion evidence, but failed to discuss other opinions. As already stated herein, "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision." *Coleman v. Comm'r of Soc. Sec.*, No. 5:14-CV-1139, 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (Report and Recommendation), *adopted by* 2016 WL 109994 (N.D.N.Y. Jan. 8, 2016) (internal citations omitted). However, this Court has recognized that "the ALJ must consider all evidence in the record" and "cannot ignore evidence supporting Plaintiff's claim while at the same time accepting evidence that supports his decision." *Ryan v. Astrue*, 650 F.Supp.2d 207, 216 (N.D.N.Y. 2009) (citing *Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004); *see also Armstead ex rel. Villanueva v. Astrue*, No. 1:04-CV-0503, 2008 WL 4517813, at *18 (N.D.N.Y. Sept. 30, 2008)). Not only did the ALJ fail to discuss opinion evidence, the ALJ failed to provide substantial evidence to support the weight she afforded to the opinions she did discuss in her decision.

At step four the ALJ afforded considerable weight to the opinion of consultative examiner, Jeanne Shapiro, Ph.D. (T. 16.) Dr. Shapiro opined Plaintiff had no limitations in her ability to: understand and follow simple instruction and directions; perform simple tasks; perform complex tasks; maintain attention and concentration for tasks; attend to a routine and schedule; and learn new tasks. (T. 467.) She opined Plaintiff had mild limitations in her ability to: make appropriate decisions; relate to and interact well with others; and deal with stress. (*Id.*) The ALJ reasoned Dr. Shapiro's opinion was entitled to considerable weight because the doctor had "extensive program and professional expertise" and her opinion was "consistent with the sum of the evidence, including [Plaintiff's] high level of daily activity." (*Id.*)

The ALJ also afforded "considerable weight" to the March 15, 2013 statement provided by treating nurse practitioner Scott Burnside. (T. 16.)[2] Nurse Burnside indicated in a form completed for a public assistance program, Plaintiff had "no limitations" in: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. (T. 490.) The ALJ reasoned Nurse Burnside's March 2013 opinion was entitled to considerable weight because it was consistent with Dr. Shapiro's opinion. (T. 16.)

---

[2] Although a nurse practitioner may be a treating health care provider, not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. §§ 404.1502, 416.902. There are five categories of "acceptable medical sources." *Id.* §§ 404.1513(a), 416.913(a). Nurse practitioners are not included within those categories. Nurse practitioners are listed among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. *Id.* §§ 404.1513(d)(1), 416.913(d)(1). Social workers, like Ms. Kolodziger, are also considered non-acceptable medical source.

The ALJ afforded "limited weight" to the October 2014 Medical Source Statement form completed by Nurse Burnside and co-signed by David Kang, M.D. and "limited weight" to the March 2015 Examination for Employability Assessment-Mental Health form completed by treating social worker Kelly Kolodziger. (T. 16.) In October 2014, Nurse Burnside/Dr. Kang checked off "mild" and "marked" when asked to what degree Plaintiff's ability to understand, remember, and carry out instructions was affected by her impairment. (T. 491.) Nurse Burnside/Dr. Kang wrote that Plaintiff's symptoms were "mild when not under duress but can be severe if placed under even minor work stress . . .[Plaintiff's] condition has always been very fragile." (*Id.*) Nurse Burnside/Dr. Kang indicated Plaintiff had "marked" limitations in her ability to interact appropriately with: the public; supervisors; and co-workers. (T. 492.) They indicated Plaintiff had "moderate" limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*) They wrote that based on mental status examination over the past four years, providers have observed Plaintiff's inability to work when attempting the Jobplus program, symptoms returned severely, and they exempted her permanently from the program. (*Id.*)[3]

The ALJ reasoned the opinion co-signed by Dr. Kang and Nurse Burnside, that Plaintiff's impairments "worsened when she is under stress" was inconsistent with Plaintiff's "high level of daily activity and childcare, with which she does not seem to have additional limitations despite the potential for stressors." (T. 16.) The ALJ creates a false inconsistency. The providers stated Plaintiff symptoms were mild but "can be severe if placed under even minor *work* stress." (T. 491.) The providers further stated

---

[3] The Jobsplus program helps welfare recipients find employment opportunities. *See* https://www.jobsplus.cc/about_us.htm

they observed Plaintiff's inability to work when trying the Jobsplus program because her symptoms returned. (T. 492.)

The ALJ also relied on Plaintiff's ability to care for her child to undermine Ms. Kolodziger's opinion. The ALJ afforded "limited weight" to the March 2015 form by Ms. Kolodziger for the Jobplus program. (T. 16.) Ms. Kolodziger indicated Plaintiff had "moderate" limitations in her ability to: follow, understand, and remember simple instructions and directions; perform low stress, simple and complex tasks independently; interact with others and maintain socially appropriate behavior without exhibiting behavior extremes; maintain attention and concentration for rote tasks; and maintain basic standards of personal hygiene and grooming. (T. 494.) She indicated Plaintiff was "severely limited" in her ability to maintain a schedule and attend to a daily routine, and function in a work setting. (*Id.*) The ALJ reasoned Ms. Kolodziger's opinion, that Plaintiff had severe limitations in her ability to maintain a schedule, was inconsistent with Plaintiff's ability to perform childcare including following her son's school schedule. (T. 16.)

Throughout her decision the ALJ relied on Plaintiff's "high level of daily activity and childcare" to support, or discount, opinions regarding Plaintiff's mental functional ability. (T. 15-16.) However, the ALJ failed to explain how Plaintiff's ability to care for one school aged child in her home translated to the ability to perform the mental demands of substantial gainful work in a typical competitive workplace environment. *McGregor v. Astrue,* 993 F.Supp.2d 130, 142 (N.D.N.Y.2012) (quoting *Woodford v. Apfel,* 93 F.Supp.2d 521, 529 (S.D.N.Y.2000) ("[I]t is well-settled that the ability to perform basic activities of self-care activities do not by themselves contradict allegations

14

of disability[.]")); *see Miller v. Colvin*, 122 F. Supp. 3d 23, 30 (W.D.N.Y. 2015) ("Plaintiff's performance of basic adaptive activities in [her] own home, or at a store where [she] has very limited interaction with other people, is not probative of [her] abilities to, e.g., follow work rules, relate to co-workers, use judgment, deal with work stresses, maintain attention and concentration, and interact appropriately with supervisors."); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 445 (W.D.N.Y. 2016) (there is "nothing inherent" in reading, watching television, and other basic activities of daily living to prove a plaintiff has the ability to perform the basic mental demands of work).

To be sure, an ALJ may rely on Plaintiff's activities of daily living in weighing opinion evidence in the record. *See Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (ALJ properly considered plaintiff's work, medication, treatment and ability to care for grandchildren and other activities of daily living in weighing medical opinion evidence). Here however, the ALJ appears to rely almost exclusively on Plaintiff's ability to care for one school aged child in her assessment of opinion evidence and ultimate mental RFC determination and the ALJ did not discuss other medical evidence in the record or treatment notations.

In addition, the ALJ did not discuss Plaintiff's psychiatric treatment notes in the context of her RFC assessment, except to state that Plaintiff's global assessment of functioning ("GAF") scores ranged from 65-70. (T. 15.)[4] In making her credibility determination, the ALJ stated Plaintiff "consistently" had GAF scores ranging from 65-70

---

[4] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 32 (4th ed. 2000)). GAF scores were removed from the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders.* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013).

which demonstrated "only some mild symptoms."  (*Id.*)  Plaintiff had GAF scores ranging from 65 to 70; however, she also had GAF scores as low as 56 which the ALJ did not discuss.  (T. 531-532.)  Therefore, the ALJ's conclusion that Plaintiff's GAF scores ranged from 65-70 misstated the record.

In addition to not properly weighing the medical opinion evidence she did discuss, the ALJ failed to discuss other evidence in the record.  Here, the ALJ noted the October 2014 statement co-signed by Nurse Burnside and Dr. Kang and Ms. Kolodziger's 2015 statement; however, the ALJ did not address a medical source form completed by Nurse Burnside in July 2014 or various other statements completed by Ms. Kolodziger.  These statements were primarily favorable to Plaintiff and supported greater limitations in mental functioning than found by the ALJ.  In July 2014, Nurse Burnside indicated Plaintiff was "moderately limited" in her ability to: understand and remember instructions; carry out instructions; make simple decisions; and maintain basic standards of personal hygiene and grooming.  (T. 497.)  He opined Plaintiff was "very limited" in her ability to: maintain attention/concentration; interact appropriately with others; maintain socially appropriate behavior without exhibiting behavior extremes; and function in a work setting.  (*Id.*)  Although Ms. Kolodziger opined in March 2014 that Plaintiff had no limitation in understanding and remembering instructions, she opined that Plaintiff's ability to perform all other mental functions was either moderately or very limited.  (T. 499.)  To be sure, an ALJ is not required to discuss every piece of evidence in the record; however, here the opinion evidence regarding Plaintiff's mental functional ability varied greatly and it is not clear from the ALJ's decision her rationale for adopting and discussing some evidence, but not all evidence.

Overall, remand is necessary for a proper analysis of the special technique at step three and analysis at step four. Although the ALJ applied the special technique and made specific findings, the ALJ did not identify findings to support her determinations nor can the ALJ's reasoning be discerned from the remainder of her decision. The ALJ further failed to properly evaluate the medical opinion, and other opinion, evidence in the record. The ALJ relied almost exclusively on Plaintiff's ability to care for a school aged child in rejecting opinions of Plaintiff's mental functional limitations and the ALJ misstated other portions of the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: July 24, 2018

                                                                     William B. Mitchell Carter
U.S. Magistrate Judge